UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HEATHER WALKER, ELIZABETH FISHER, and CANDACE HASH, *on behalf of themselves and all others similarly situated*,     ) ) ) ) | |
| *Plaintiffs*,     ) ) | No. 1:15-cv-01978-JMS-TAB |
| *vs.*     ) ) | |
| HEALTH AND HOSPITAL CORPORATION OF MAR-ION COUNTY,     ) ) ) | |
| *Defendant*.     ) | |

## ORDER

Plaintiffs Heather Walker, Elizabeth Fisher, and Candace Hash were all Respiratory Ther-

apists employed by Defendant Health and Hospital Corporation of Marion County ("HHC"), who

worked at a hospital owned by HHC.  They initiated this litigation on behalf of themselves and a

class of similarly situated individuals, claiming that HHC violated the Fair Labor Standards Act

("FLSA"), the Indiana Wage Payment Act ("IWPA"), and the Indiana Wage Claims Act

("IWCA") by not paying its Respiratory Therapists when they were unable to take a meal break,

or their meal break was interrupted.  Presently pending before the Court are several motions filed

by Plaintiffs, including: (1) a Motion to Certify Combined Class Action and FLSA Collective

Action, [Filing No. 24]; (2) a Motion for Approval of Proposed Collective Action Notice and Opt-

In Consent Form, [Filing No. 25]; (3) a Motion for Approval of Proposed Rule 23 Class Notice,

[Filing No. 26]; and (4) a Motion for Leave to File Supplemental Evidence in Support of Rule 23

and FLSA Conditional Certification, [Filing No. 46].

# I.
## BACKGROUND

### A. Eskenazi Health and the Respiratory Care Department

HHC owns Eskenazi Health, formerly known as Wishard Health Services.  [Filing No. 15 at 5; Filing No. 33-17 at 2.]  Eskenazi Health operates HHC's hospitals, including Sidney & Lois Eskenazi Hospital (the "Hospital").[1]  [Filing No. 15 at 5; Filing No. 33-16 at 2.][2]

The Hospital's Respiratory Care Department (the "Department") provides respiratory therapy services to patients.  [Filing No. 33-16 at 3.]  Level 1 Respiratory Care Practitioners ("RCPs") are expected to provide respiratory therapy services to patients in most units of the Hospital, while Level II RCPs are expected to provide respiratory therapy services to those same units as well as the Neonatal Intensive Care Unit and the Emergency Department.  [Filing No. 33-16 at 3.]  Some Level II RCPs are also assigned Charge Therapist duties, including managing and prioritizing shift

---

[1] At times the parties appear to interchangeably refer to HHC and Eskenazi Health, which is likely because HHC owns Eskenazi Health.  For the sake of simplicity and where appropriate, the Court will refer to Eskenazi Health, since it is undisputed that the Plaintiffs worked at Eskenazi Health's hospital.

[2] The Court notes that its Practices and Procedures clearly set forth in Appendix A how to cite to exhibits in a brief.  [Filing No. 5.]  The parties have not followed the Court's clear instruction, instead referring to exhibits by name or letter, and citing to their actual page numbers instead of their ECF page numbers.  For example, Plaintiffs cite to material in paragraph 4 of the Declaration of Heather Walker as "Ex. D, ¶ 4."  [See Filing No. 27 at 4.]  Instead, the citation should be "Filing No. 27-4 at 2," which corresponds to the ECF number of the document, and the ECF page number where the cited testimony appears.  Similarly, HHC has not followed the Court's Practices and Procedures, and refers to the exhibit name rather than the ECF number of the document.  For example, HHC cites to material in paragraph 5 of the Declaration of Ryan Morton as "Ryan Morton Decl. ¶ 5."  [Filing No. 32 at 3.]  This citation should be "Filing No. 33-16 at 2," which denotes the ECF number of the document, and the ECF page number where the cited testimony appears.  The parties' failure to provide the form of citation the Court has set forth in its Practices and Procedures has made the Court's review of the pending motions unnecessarily cumbersome.  Counsel are cautioned to comply with the Court's Practices and Procedures going forward in this and other cases.

assignments, calling in additional people and/or taking on assignments when the Hospital is short-staffed, and providing backup to their co-workers as needed.  [Filing No. 33-16 at 3.]

The Department operates on two shifts – the day shift, which runs from 7:00 a.m. to 7:30 p.m., and the night shift, which runs from 7:00 p.m. to 7:30 a.m.  [Filing No. 33-16 at 3.]  There are weekday and weekend shifts, with weekday employees typically working three shifts per week and weekend employees typically working two or three shifts per week.  [Filing No. 33-16 at 3.]

### B.  Eskenazi Health's Payment and Meal Break Policies and Practices

The Department's non-exempt employees use the Kronos timekeeping system.  [Filing No. 33-5 at 6.]  Specifically, employees clock in at the beginning of their shift on the Kronos system, and clock out at the end of their shift.  [Filing No. 33-5 at 6.]  Eskenazi Health required Department employees to take a 30-minute unpaid meal break, and the Kronos system was programmed to reflect that a meal break was taken without the need for employees to clock out for the meal break, and then back in for the remainder of their shift.  [Filing No. 33-5 at 6.]  Eskenazi Health's "Meal Breaks" policy, set forth in its employee handbook, provides:

> Employees will be scheduled for a minimum of a 30-minute unpaid meal break during each shift of eight hours or more in length.  Unless the employee works during the meal break or management requires the employee to stay at the employee's desk in order to respond to calls, etc., the meal time does not count as hours worked and will not be paid.  Employees should not work through their meal break without prior supervisor approval; however, if they do work during the meal break they must notify the supervisor immediately.  Each department will notify its employees if they need to clock in and clock out for meals using Eskenazi Health's automated time-tracking system.  If an employee clocks in and clocks out for meals and uses 20 minutes or less, the supervisor will make the appropriate adjustments in the time system and the meal time will be paid.

[Filing No. 27-1 at 1-2.]

Eskenazi Health's "Total Rewards Philosophy" set forth in its employee handbook states that "[e]mployees have a duty to review their electronic paystubs every pay period to ensure there

are no errors.  Employees who observe errors in their pay should immediately notify their supervisor so that corrections can be made."  [Filing No. 33-7 at 2.]  Additionally, the "Corporate Compliance Program" in the employee handbook provides that:

> All employees are required to follow basic rules of conduct, obey all laws and regulations, keep accurate records, do their jobs in an ethical manner, and report possible violations.  Any employee who observes or suspects violations of rules, laws or regulations should first discuss the matter with his or her supervisor.  If the employee feels uncomfortable discussing the matter with his or her supervisor, or if the supervisor is involved in the unethical or illegal conduct, the employee should contact Eskenazi Health Corporate Compliance, Eskenazi Health Human Resources or Eskenazi Health Legal Affairs.

[Filing No. 33-15 at 107.]  The handbook provides a hotline for employees to confidentially report suspected violations.  [Filing No. 33-15 at 107.]  Eskenazi Health's Director of Human Resources stated that she was "not aware of any complaints made through the Corporate Compliance Program by current or former Respiratory Care Department employees alleging that they were not paid for missed or interrupted meal breaks.  If any such complaints had been made to Human Resources or using the hotline number referenced in the Corporate Compliance Program summaries, I would be aware of those based on my position within Human Resources."  [Filing No. 33-14 at 3.]

Eskenazi Health's Director of Human Resources, Terri Garner, presented an "FLSA Refresher" to management at a Leadership Forum, which included the following information regarding meal breaks:

- "[The employer] [m]ust pay for breaks of 20 minutes or less";

- "[M]ost hourly employees receive a 30 minute <u>unpaid</u> lunch if they work at least 8 hours – Kronos takes an automatic deduction for 30 minutes each day";

- "If a meal period is unpaid, the employee **must be completely relieved of duties** and free to leave his or her work area";

- "An employee may be required to remain on the employer's premises";

- "If employees perform work during the lunch period, or are required to stay at their desk or machine, compensation is required";

- "Employees who voluntarily work through meal or rest periods, are engaged in compensable time";

- "Even if you have a rule that states employees cannot work during their lunch or breaks, if they violate the rule and work, they <u>must</u> be paid";

- "You may need to override the automatic deduction for the meal period";

- "Advise employees to notify their supervisor if they work through lunch so that adjustments can be made";

- "If employees continue to work through lunch in violation of your rule or policy, begin the progressive discipline process, <u>but pay them for any time worked</u>"; and

- "Let employees know that it is important that they take a work-free lunch."

[Filing No. 33-14 at 20-24 (emphasis in original).]

Ryan Morton has been the Manager of the Department since October 2012. [Filing No. 33-16 at 2.] Mr. Morton informed employees that they were to e-mail him if they were unable to take an uninterrupted 30-minute meal break, and that he would adjust their records in Kronos so that they would be paid for that meal break. [Filing No. 33-16 at 5.] Additionally, Christopher Scott, Vice President of Clinical Services at Eskenazi Health, sent an email to all Department employees on October 5, 2012 which discussed the meal breaks policy and stated:

I want to clarify an expectation for the Department. If you please refer to the…Employee Handbook page 18, it states "Employees will be scheduled for a minimum of a 30-minute unpaid meal break during each shift of eight hours or more in length." That 30 minute time is automatically deducted from your hours worked when you clock in and clock out. IF you are unable, because of work load, to take a 30 minute break during your shift, please let me know and I will adjust your Kronos hours.

There is no requirement that you actually consume food during that break. If you choose to take a break of 30 minutes and do something else (make personal phone calls, walk, exercise, read the newspaper, sit and do nothing, etc.) then that is your choice. It is still considered your break. Additionally, as we are all health care

professionals and understand that we work in a hospital that is 24/7/365, it is not a reasonable expectation that you will get your 30 minutes each day at the same time or at a regularly scheduled time.  Please notice that the <u>only required break</u> for employees is what is outlined as a 30 minute meal break.  There is no expecta-tion/rule that states that employees will have time to get breakfast, a snack, and a 30 minute lunch break.

Again, I know that the majority of the staff understand these rules and abide by these expectations; however, I want to make sure everyone has the same black and white set of expectations with regards to breaks.

[Filing No. 33-17 at 2; Filing No. 33-17 at 5 (emphasis in original).]

### C.  Plaintiffs' Employment With Eskenazi Health

Heather Walker worked in the Department from May 3, 2004 until her employment was involuntarily terminated on October 28, 2015.  [Filing No. 27-4 at 1.]  Ms. Walker was a Respira-tory Therapist who was an hourly, non-exempt employee.  [Filing No. 27-4 at 1.]  Elizabeth ("Nikki") Fisher worked in the Department from September 1996 until February 2015, when she resigned.  [Filing No. 27-6 at 1; Filing No. 33-16 at 3.]  During this time, she held an hourly non-exempt position of Respiratory Therapist.  [Filing No. 27-6 at 1.]  Candace Hash worked in the Department from June 2010 until January 2015, when she resigned her employment.  [Filing No. 27-5 at 1.]  Ms. Hash was an hourly, non-exempt Respiratory Therapist, and held the title of Res-piratory Care Practitioner.  [Filing No. 27-5 at 1.]

### D.  Plaintiffs' Experiences With Eskenazi Health's Meal Breaks Policy

Plaintiffs submitted declarations which summarize their experiences with Eskenazi Health's meal breaks policy.  Ms. Walker states in her Declaration the following:

- "Throughout my employment, [Eskenazi Health] automatically deducted thirty (30) minutes from each shift to count towards an assumed meal break.  [Es-kenazi Health] did not require Respiratory Therapists to clock-in or clock-out for this assumed meal break";

- "Throughout my employment, [Eskenazi Health] consistently understaffed the hospital with Respiratory Therapists, resulting in Respiratory Therapists routinely working through their meal break without being relieved and without being compensated. The charge sheets, along with the schedule, show that Respiratory Therapists were routinely understaffed by around 1-3 Respiratory Therapists per shift. I routinely worked through my scheduled meal break at least 80-90% of the time without being compensated. I very rarely received a full thirty (30) minute uninterrupted meal break. Respiratory Therapists were required to stay in their assigned areas during their meal break, they were required to keep their pager and phones, and they were required to answer pages and phone calls during their meal break, which was a common occurrence. Respiratory Therapists were not relieved during their meal break. For example, another Respiratory Therapist would not take over my patients so that I could enjoy an uninterrupted thirty (30) minute meal break. I witnessed other Respiratory Therapists also routinely work through their scheduled meal break without being compensated";

- "Management, including Ryan Morton, Chris Scott, and Jim Graves, for [Eskenazi Health] was well aware of Respiratory Therapists working through meal breaks without being compensated. At the beginning of each shift, the charge sheet identifies the number of Respiratory Therapists needed to sufficiently staff the shift. This sheet consistently showed that we were understaffed by 1-3 Respiratory Therapists per shift. Management reviews these charge sheets, and the charge Respiratory Therapist was required to notify management if we were understaffed. During routine Clinical Specialist meetings, we discussed with management our heavy workload and need for more staffing. During my entire employment, management never assigned any personnel to relieve me during my meal break. Defendant required me to respond to any work duties while on my meal break. Ryan Morton, a previous Respiratory Therapist[ ], even worked under these same conditions in the past, so he was well aware that Respiratory Therapists consistently worked through their meal break without being compensated. Management developed a work environment and culture whereby Respiratory Therapists only requested pay through their meal break if they did not receive "any" time at all to eat. For example, if a Respiratory Therapist had five (5) minutes to eat lunch, but then went back to work, the common practice was to not ask for pay for the thirty (30) minute meal break, even though we worked through the vast majority of meal breaks. Throughout my employment, an uninterrupted full thirty (30) minute break rarely occurred";

- "At all times relevant, I worked anywhere from 36-50 hours per week, of which approximately 1.5-2.0 hours were not properly compensated due to working through my scheduled meal break."

- 7 -

[Filing No. 27-4 at 2-3.] Ms. Fisher and Ms. Hash submitted substantially identical declarations. [Filing No. 27-5; Filing No. 27-6.][3]

Plaintiffs also submitted declarations from two other Respiratory Therapists at Eskenazi Health – Tricia Vaughan and Holly Bell. [Filing No. 27-7; Filing No. 27-8.] Ms. Vaughan states that the Department was "consistently understaffed" with Respiratory Therapists, and that she "routinely worked through [her] scheduled meal break," and "rarely receive[d] a full thirty (30) minute uninterrupted meal-break." [Filing No. 27-7 at 2.] Like Plaintiffs, Ms. Vaughan also states that Respiratory Therapists were required to stay in their assigned area during meal breaks, that they were required to keep their pager and phones on them and turned on, and that they were required to answer pages and phone calls during their meal breaks. [Filing No. 27-7 at 2.] Ms. Vaughan also states that "[Eskenazi Health's] policy and practice is to not request payment for working through the meal-break unless the Respiratory Therapist received no time, whatsoever, to sit down and eat. In other words, partial meal-breaks and interrupted meal-b[r]eaks were not sup-posed to be reported for payment, as long as we had a few minutes to eat. Ryan Morton…used to be a Respiratory Therapist and I witnessed him work under this same policy and practice of not requesting payment for partial meal-breaks and interrupted meal-breaks. Throughout my employ-ment, an uninterrupted full thirty (30) minute break rarely occurs." [Filing No. 27-7 at 3.] Ms. Bell's declaration contains many of the same statements as Ms. Vaughan's Declaration, and Ms. Bell adds that she estimates that she "was interrupted during my meal break at 2/3rds of the time,

---

[3] Unlike Ms. Walker and Ms. Fisher, who estimated they worked 36-50 hours per week, Ms. Hash states that she worked 24-30 hours per week, but also estimates (along with Ms. Walker and Ms. Fisher) that she was not properly compensated for approximately 1.5 to 2.0 hours per week. [Filing No. 27-5 at 3.]

and…would have to actually leave my meal break to perform work at least once a week." [Filing No. 27-8 at 2.]

### E.  Other Employees' Experiences With Eskenazi Health's Meal Breaks Policy

HHC submitted evidence regarding other employees' experiences with Eskenazi Health's meal breaks policy, including the Declaration of Jill Wichman, a Respiratory Care Practitioner at Eskenazi Health.  [Filing No. 33-18.]  Ms. Wichman states that she knows she is required to take a 30-minute unpaid meal break, she knows that if she does not take a 30-minute uninterrupted break then she is to report that to Mr. Morton and he will adjust her Kronos time records to reflect that she is to be paid for those 30 minutes, and that she is regularly able to take a 30-minute uninterrupted meal break at some point during her shift.  [Filing No. 33-18 at 2-3.]  She estimates that she has been able to take her full uninterrupted meal break on 99 percent of her shifts.  [Filing No. 33-18 at 3.]

In connection with Mr. Morton's Declaration, HHC also submitted numerous email messages from employees requesting to be paid because they had missed their meal breaks or their meal breaks were interrupted, along with Mr. Morton's email responses indicating that he would adjust their time so that they were paid accordingly.  [Filing No. 33-16 at 9-27.]  Ms. Walker submitted such a request on August 18, 2014 for "all the night shift RT's that were here this evening," because they "all had a very hard shift as we were very short and everyone worked together and got the job done.  But nobody was able to sit down and have lunch."  [Filing No. 33-16 at 13.]  Ms. Fisher also submitted a request on behalf of another Respiratory Therapist, stating in an email to Mr. Morton "Today was an amazing day at work and Kayla did not get lunch.  She had a morsel of a powdered donut at 0715 and never had an opportunity to consume any form of nutrition thereafter.  The Burn Unit was extremely demanding, but very well taken care of by a starving RT."

[Filing No. 33-16 at 16.]  The other Respiratory Therapist followed up with an email to Mr. Morton, stating that Ms. Fisher "is supportive of me being paid for lunch."  [Filing No. 33-16 at 17.]  Mr. Morton has never denied a request by an employee to be paid for a missed or interrupted meal break.  [Filing No. 33-16 at 5.]

### F.  The Litigation

Plaintiffs initiated this lawsuit on December 16, 2015, [Filing No. 1], and filed the operative Amended Complaint on February 11, 2016, [Filing No. 14].  Plaintiffs assert claims against HHC on behalf of themselves and:

> All Respiratory Therapists employed at any time by [Eskenazi Health] from December 16, 2013, until the present, who worked through lunch without receiving compensation under [the IWPA and/or the IWCA and]
>
> All Respiratory Therapists employed at any time by [Eskenazi Health] from December 16, 2012, until the present, who worked through lunch without receiving overtime compensation under the [FLSA].

[Filing No. 14 at 6.]  Plaintiffs assert claims for: (1) violation of the FLSA for failing to pay all overtime wages on behalf of Ms. Walker, Ms. Fisher, and those similarly situated; (2) violation of the IWPA on behalf of Ms. Fisher, Ms. Hash, and those similarly situated; and (3) violation of the IWCA on behalf of Ms. Walker.[4]  [Filing No. 14 at 6-7.]

---

[4] Current employees or employees who voluntarily terminated their employment may bring claims under the IWPA for unpaid wages, Ind. Code § 22-2-5-1, et seq., while employees who were involuntarily terminated must seek unpaid wages under the IWCA, Ind. Code § 22-2-9-1, et seq. – and may only do so after exhausting their administrative remedies with the Indiana Department of Labor.  See Ind. Code § 22-2-9-4; Hollis v. Defender Sec. Co., 941 N.E.2d 536, 540 (Ind. Ct. App. 2011).  Plaintiffs conceded in their brief in support of their Motion to Certify that Ms. Walker "is the only individual separated by Defendant within the relevant time frame to have filed a wage claim with the Indiana Department of Labor."  [Filing No. 27 at 2.]  They clarify in their reply brief that, for this reason, they do not seek class certification for the IWCA claim.  [Filing No. 40 at 8-9.]

Plaintiffs' Motion to Certify Combined Class Action and FLSA Collective Action, [Filing No. 24], Motion for Approval of Proposed Collective Action Notice and Opt-In Consent Form, [Filing No. 25], Motion for Approval of Proposed Rule 23 Class Notice, [Filing No. 26], and Motion for Leave to File Supplemental Evidence in Support of Rule 23 and FLSA Conditional Certification, [Filing No. 46], are now fully briefed and ripe for the Court's consideration. Because the Motion for Leave to File Supplemental Evidence in Support of Rule 23 and FLSA Conditional Certification, [Filing No. 46], relates to the evidence that the Court could consider in deciding the Motion to Certify, the Court will discuss that motion first.

## II.
### PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL EVIDENCE

On October 31, 2016 – almost two months after they filed their reply brief in support of their Motion to Certify – Plaintiffs filed a Motion for Leave to File Supplemental Evidence in Support of Rule 23 and FLSA Conditional Certification. [Filing No. 46.] Plaintiffs request that the Court consider the Declaration of Tasha Secuskie, a Respiratory Therapist who has worked for Eskenazi Health from May 2004 until the present. [Filing No. 46 at 1.] Plaintiffs do not explain why they did not submit the Declaration during briefing of the Motion to Certify, but rather simply state that the Declaration "contains pertinent information to the issue of Rule 23 certification as well as FLSA conditional certification." [Filing No. 46 at 1.] Plaintiffs point to Ms. Secuskie's statement in her Declaration that:

> The previous Manager over Respiratory Therapists, Jim Graves, told Respiratory Therapists that we were not allowed to request pay through the assumed meal-break unless we did not receive any time, whatsoever, to eat food. Graves stated "the only way you can request to be paid for lunch is if you get no time at all by 2:00." Graves established the practice for the policy that Respiratory Therapists should not request pay for partial meal-breaks, meaning if we had a few minutes to eat but not an uninterrupted thirty (30) minute break, we were not supposed to request pay. Ryan Morton was a Respiratory Therapist under Graves for a period of time. When Ryan Morton became the Manager, he did not change the policy or practice.

Throughout my employment, an uninterrupted full thirty (30) minute break rarely, if ever, occurred.

[Filing No. 46-1 at 2-3.]

HHC responds to Plaintiffs' request by arguing that Plaintiffs have not shown good cause to depart from the briefing schedule by submitting an untimely declaration. [Filing No. 47 at 2-3.] It also argues that the statements in the Declaration are inadmissible and irrelevant because: (1) Ms. Secuskie does not provide any foundation for her statement that Mr. Graves established Eskenazi Health's "practice for the policy that Respiratory Therapists should not request pay for partial meal-breaks"; and (2) she does not provide adequate information regarding her statement that Mr. Graves told Respiratory Therapists that they were not allowed to request pay through the assumed meal break unless they did not receive any time at all. [Filing No. 47 at 3-5.] HHC argues that if the Court considers the Secuskie Declaration, it should also consider a Supplemental Declaration from Terri Garner, Director of Human Resources at Eskenazi Health, which states that Jim Graves was last employed by Wishard Health Services on July 2, 2011, before it became Eskenazi Health. [Filing No. 47-1 at 1.] Ms. Garner also states that Mr. Graves was a Respiratory Care Practitioner III, and reported to the Manager of Respiratory Care who in turn reported to the Interim Director of Respiratory Care. [Filing No. 47-1 at 1-2.]

On reply, Plaintiffs argue that "[d]iscovery is ongoing, and it is only natural that both Parties may discover additional relevant evidence after briefing has occurred." [Filing No. 48 at 1.] They argue that Ms. Secuskie has provided ample foundation for her statements, and that Ms. Garner's Supplemental Declaration "fails to state that Graves was never a manager, and thus adds no support to [HHC's] arguments regarding hearsay and admissibility." [Filing No. 48 at 2-3.] Plaintiffs do not address HHC's argument that Mr. Graves has not been employed with Wishard

Health Services since July 2011, and has never been employed by Eskenazi Health.  [*See* Filing No. 48.]

Plaintiffs filed their reply brief in support of their Motion to Certify on September 6, 2016, and filed the Motion for Leave to File Supplemental Evidence on October 31, 2016.  Their only explanation for the late submission of the Secuskie Declaration is that discovery is "ongoing" and it is "only natural" that additional relevant evidence may be discovered after briefing has occurred. [Filing No. 48 at 1.]  Plaintiffs filed the Motion to Certify, and presumably were well aware of their burden of proof and the type of evidence they would need to present.  They make no attempt to explain why the Secuskie Declaration should be given special treatment, and why the Court should consider it nearly two months after Plaintiffs' deadline for submitting such evidence.  The Court must draw the line somewhere in terms of considering evidence, and that line ends when briefing ends, absent extenuating circumstances which have not been established by Plaintiffs here. Plaintiffs' submission of the Secuskie Declaration is untimely, and the Court will not consider it. Accordingly, Plaintiffs' Motion for Leave to File Supplemental Evidence in Support of Rule 23 and FLSA Conditional Certification, [Filing No. 46], is **DENIED**.

### III.
### PLAINTIFFS' MOTION TO CERTIFY

At the outset, the Court notes the Seventh Circuit Court of Appeals' instruction that "employees who institute a collective action against their employer under the terms of the [FLSA] may at the same time litigate supplemental state-law claims as a class action certified according to Federal Rule of Civil Procedure 23(b)(3)."  *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 973-74 (7th Cir. 2011); *see also Robertson v. Steamgard*, 2012 WL 1232090, *2 (N.D. Ill. 2012) ("the Seventh Circuit has held that the FLSA is 'amenable to state-law claims for related relief in the same federal proceeding'").  This Court will heed that instruction, and finds it proper that Plaintiffs

have brought, and seek certification of their FLSA claims and their IWPA claims in the same litigation. The Court will address conditional certification of Plaintiffs' FLSA claims first.

### A.  Conditional Certification of FLSA Collective Action Claims

#### 1.  *Collective Action Certification Standard*

The FLSA provides that an action for unpaid minimum wages or unpaid overtime compensation may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).  A collective action differs significantly from a class action brought pursuant to Federal Rule of Civil Procedure 23.  The primary difference is that plaintiffs who wish to be included in a collective action must affirmatively opt in by filing a written consent with the Court, while members of a Rule 23 action are automatically included unless they affirmatively opt out. *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010).  Accordingly, Rule 23 and its standards governing class certification do not apply to a collective action brought under the FLSA.

An employee may only bring a collective action on behalf of other employees who are similarly situated. 29 U.S.C. § 216(b).  Therefore, to decide whether to initially certify a collective action, the Court must determine whether members of the proposed class are, in fact, similarly situated. *Campbell v. Advantage Sales & Mktg., LLC*, 2010 WL 3326752, *3-4 (S.D. Ind. 2010). Courts within this Circuit typically use a two-step inquiry. *Scott v. NOW Courier, Inc.*, 2012 WL 1072751, *7 (S.D. Ind. 2012); *Lallathin v. Ro Inc.*, 2010 WL 2640271, *1 (S.D. Ind. 2010).

The first step, also known as the notice stage, involves analysis of the pleadings and affidavits that have been submitted to determine whether notice should be given to potential class members. *Campbell*, 2010 WL 3326752 at *3.  Although the first step of certification does not impose a high burden on the plaintiff, "this does not mean that the 'modest factual showing' is a

mere formality." *Id.* at *4. It serves as an important and functional step in the certification process because "it would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Adair v. Wis. Bell, Inc.*, 2008 WL 4224360, *4 (E.D. Wis. 2008) (citation omitted).

The second step of certification occurs after discovery has largely been completed and allows a defendant the opportunity to seek decertification of the class or restrict the class because various putative class members are not, in fact, similarly situated as required by the FLSA. *Id.* at *3. Under this more stringent inquiry, courts typically consider the following factors: "(1) whether plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Threatt v. CRF First Choice, Inc.*, 2006 WL 2054372, *5 (N.D. Ind. 2006).

The FLSA does not define the term "similarly situated" or instruct judges when to exercise their discretion and authorize notice to potential plaintiffs. *Raymer v. Mollenhauer*, 2010 WL 3259346, *1 (N.D. Ind. 2010). Courts have held, however, that being similarly situated does not require identical positions of the putative class members; instead, it requires that common questions predominate among the members of the class. *Campbell*, 2010 WL 3326752 at *3-4; *Alvarez*, 605 F.3d at 449.

When a plaintiff seeks conditional certification of an FLSA class after significant discovery, the court can "'collapse the two stages of the analysis and deny certification outright.'" *Armstrong v. Wheeels Assured Delivery Systems, Inc.*, 2016 WL 1270208, *5 (S.D. Ind. 2016) (quoting *Purdham v. Fairfax County Pub. Schs.*, 629 F.Supp.2d 544, 547 (E.D. Va. 2009)). At this in-

between stage, when substantial discovery has taken place, an intermediate level of scrutiny is applied. *Scott*, 2012 WL 1072751 at *7-8.

In this case, the parties rely upon excerpts from two depositions, numerous declarations, and written discovery. HHC argues that "substantial discovery" has occurred, and the Court should apply an intermediate level of scrutiny to Plaintiffs' motion. [Filing No. 32 at 25-26.] On the other hand, Plaintiffs argue that the Court should apply a more lenient standard because none of the named Plaintiffs have been deposed, no HHC representatives have been deposed, only two potential class members have been deposed, and "[a]t the time Plaintiffs sought conditional discovery, the only discovery to have occurred was the exchange of initial written discovery requests and responses." [Filing No. 40 at 11.]

The Court finds that only limited discovery has taken place thus far. Significantly, neither the named Plaintiffs nor any HHC representatives have been deposed. The Case Management Plan does not provide for discovery deadlines, indicating that the parties contemplated that discovery would proceed in earnest after the Motion for Certification was decided. Accordingly, the Court will analyze whether the collective action should be conditionally certified under the lenient standard.

   *2. Discussion*

Plaintiffs seek conditional certification of the following FLSA class:

Present and former Respiratory Therapists (i.e. Respiratory Care Practitioners and Respiratory Care Clinical Specialists) for any period of time from three (3) years preceding the Court's Order approving the conditional certification of the collective action to the present, and who have not been paid overtime wages for all time spent working beyond forty (40) hours per week because the employee took a lunch break of twenty (20) minutes or less.

[Filing No. 27 at 6.][5]  Plaintiffs assert that the collective action class members are similarly situated to Ms. Walker and Ms. Fisher.  [Filing No. 14 at 6-7.]  In support of their Motion to Certify, Plaintiffs argue that Eskenazi Health has admitted that it pays all Respiratory Care Practitioners as hourly, non-exempt employees, and that the collective action class may consist of up to 71 individuals.  [Filing No. 27 at 20-21.]  They argue that all employees were subject to the same meal break automatic thirty-minute deduction policy, that Plaintiffs routinely worked through their meal break without being properly compensated, and that Respiratory Therapists were not relieved of duties, were not free to leave their work area, and were routinely interrupted with work duties during their meal break.  [Filing No. 27 at 21-22.]  Plaintiffs argue that they and all other Respiratory Therapists "were all hourly non-exempt employees, subject to the same meal-break automatic deduction policy, who routinely worked through their meal-break without being compensated."  [Filing No. 27 at 22.]  Plaintiffs also contend that this case is appropriate for Court-facilitated notice, and request a list of former and current Respiratory Therapists to facilitate such notice.  [Filing No. 27 at 22-24.]

In response, HHC argues that Plaintiffs have not articulated a common policy that violates the FLSA, that Eskenazi Health's policy does not in fact violate the FLSA, and that Plaintiffs "must show something more, but they have failed to do so."  [Filing No. 32 at 26-27.]  HHC notes that employees, including Ms. Fisher, knew to notify their supervisor if they missed their meal

---

[5] The Court notes that Plaintiffs' FLSA collective action class definition has changed since they filed the Amended Complaint.  The class is defined in the Amended Complaint as Respiratory Therapists who "worked through lunch without receiving compensation," [Filing No. 14 at 6], but then is defined in the Motion to Certify as Respiratory Therapists who have not been paid overtime wages "because the employee took a lunch break of twenty (20) minutes or less," [Filing No. 27 at 6].  This indicates that Plaintiffs' focus has shifted to interrupted meal breaks, rather than meal breaks that the employee missed altogether.  Out of an abundance of caution, the Court will address both scenarios when considering the Motion to Certify.

break, and that simply alleging there was a work environment, culture, or practice is not enough to show that Plaintiffs and other employees are similarly situated. [Filing No. 32 at 27-28.] HHC contends that the nature of Plaintiffs' FLSA allegations would require individualized evidentiary hearings regarding numerous issues, including the number of shifts each employee worked, the length of the interruption in the meal break, the employee's actions after the interruption, other activities besides work the employee engaged in when they had interrupted meal breaks, the reason the employee did not report the interrupted meal break, and whether the additional compensable time caused the employee to work more than 40 hours in any given week. [Filing No. 32 at 29.] HHC argues that Plaintiffs have not presented any information or documentary support indicating the amount of time they allegedly worked off the clock, nor the number of hours for which they were allegedly not paid. [Filing No. 32 at 30.] HHC asserts that Plaintiffs do not have any knowledge regarding whether other employees requested pay for missed or interrupted meal breaks, instead relying on general statements in their own declarations. [Filing No. 32 at 31.] It argues that the declarations Plaintiffs submit are nearly identical, which "indicates they are not true statements based on personal knowledge of the declarants." [Filing No. 32 at 33.] Finally, HHC argues that if the Court grants conditional certification, a two-year statute of limitations should apply because Plaintiffs have not shown HHC willfully violated the FLSA. [Filing No. 32 at 33-34.]

On reply, Plaintiffs argue that they have met the threshold showing that they are similarly situated to other Respiratory Therapists because Eskenazi Health had a policy to automatically deduct thirty minutes from compensable time and "Plaintiffs routinely worked through this lunch break without being properly compensated." [Filing No. 40 at 13.]

The FLSA provides the following regarding an employer's payment of overtime to its employees:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a).  29 C.F.R. § 785.19 further provides that "[b]ona fide meal periods are not worktime.  Bona fide meal periods do not include coffee breaks or time for snacks.  These are rest periods.  The employee must be completely relieved from duty for the purposes of eating regular meals….  The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating."

Under the FLSA, employers have a duty to "exercise [their] control and see that [ ] work is not performed if it does not want it to be performed." 29 C.F.R. § 785.13.  Employers "cannot sit back and accept the benefits [of an employee's work] without compensating for them." *Id.* But, an employer is not required to "pay for work it did not know about, and had no reason to know about." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 177 (7th Cir. 2011) (plaintiffs have the burden of showing that they performed overtime work for which they were not compensated).  In sum, "an employer cannot be held liable for FLSA violations unless it has actual or constructive knowledge of an employee's overtime work." *Boelk v. AT&T Teleholdings, Inc.*, 2013 WL 3777251, * 6 (W.D. Wis. 2013).  Constructive knowledge under the FLSA means that the employee "had reason to know" or "should have known" that its employees were performing uncompensated work.  *Kellar*, 664 F.3d at 177.  "Even if an employer has promulgated a rule against

overtime or a procedure to report overtime, the employer may still be liable if it should have discovered by exercising reasonable diligence that its employees were not following the rule." *Boelk*, 2013 WL 3777251 at *6 (citing 29 C.F.R. § 785.13; *Reich v. Department of Conservation & Natural Resource, State of Alabama*, 28 F.3d 1076, 1082 (11th Cir. 1994)).

Ms. Walker and Ms. Fisher – the only named Plaintiffs that assert the FLSA overtime claim – focus heavily on their allegations that the Hospital was understaffed with Respiratory Therapists (causing them to have to work through their meal break or have their meal break interrupted), and that they were not relieved of their duties during their meal breaks. But there is a disconnect with their allegations and showing that Eskenazi Health had a policy or practice of violating the FLSA – a burden that lies with Ms. Walker and Ms. Fisher. *Melton v. Tippecanoe County*, 838 F.3d 814, 818 (7th Cir. 2016) ("an employee who brings suit pursuant to FLSA has the burden of proving that he performed work for which he was not properly compensated") (citation and quotation omitted). Automatically deducting thirty minutes for a meal break is not a *per se* violation of the FLSA. *See, e.g.*, *Cason v. Vibra Healthcare*, 2011 WL 1659381, *3 (E.D. Mich. 2011) ("the use of an automatic meal break deduction, in itself, does not violate the FLSA"). The relevant focus is not whether Respiratory Therapists were unable to take their meal breaks, but whether Eskenazi Health knew or should have known that Respiratory Therapists were working through their meal breaks or not taking complete meal breaks and, if so, whether they paid them for those missed or interrupted meal breaks.

The modest showing Plaintiffs must make at this stage of the litigation "is not a mere formality." *Campbell*, 2010 WL 3326752 at *4. Instead, Plaintiffs must provide some evidence that they and other potential plaintiffs "'together were victims of a common policy or plan that violated the law.'" *Vazquez v. Ferrara Candy Company*, 2016 WL 4417071, *3 (N.D. Ill. 2016) (quoting

*Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 345 (N.D. Ill. 2012)).   The only

evidence Ms. Walker and Ms. Fisher present regarding management's knowledge that Respiratory

Therapists were not taking their meal breaks, and that Eskenazi Health in turn was not paying for

missed or interrupted meal breaks, are the following statements in Ms. Walker's and Ms. Fisher's

nearly identical declarations, and in the declarations of Ms. Vaughan and Ms. Bell:

- "Management developed a work environment and culture whereby Respiratory Therapists only requested pay through their meal break if they did not receive 'any' time at all to eat.  For example, if a Respiratory Therapist had five (5) minutes to eat lunch, but then went back to work, the common practice was to not ask for pay for the thirty (30) minute meal break, even though we worked through the vast majority of meal breaks."  [Filing No. 27-4 at 3; Filing No. 27-6 at 3.]

- "Defendant's policy and practice is to not request payment for working through the meal-break unless the Respiratory Therapist received no time, whatsoever, to sit down and eat.  In other words, partial meal-breaks and interrupted meal-b[r]eaks were not supposed to be reported for payment, as long as we had a few minutes to eat."  [Filing No. 27-7 at 3; Filing No. 27-8 at 2.]

Plaintiffs have not provided adequate evidence that they and other Respiratory Therapists

were victims of a common policy or plan at Eskenazi Health to not compensate them for missed

or interrupted meal breaks.  The vague statements in the declarations regarding a policy of not

requesting payment, or a "work environment" or "culture," are not sufficient to make even the

modest showing needed under the lenient standard.  These statements do not provide any infor-

mation regarding what led the declarants to believe that they were not supposed to request pay for

missed or interrupted meal breaks – a practice specifically set forth in the employee handbook.

The statements also do not address whether management was aware that they felt this way or, even

if they knew that employees were working through their meal breaks or having their meal breaks

interrupted, whether they knew that those same employees were then not contacting their supervi-

sors to request payment.  *See Adair v. Wisconsin Bell, Inc.*, 2008 WL 4224360, *6 (E.D. Wis.

2008) (denying conditional certification of FLSA collective action class related to incidental over-time under lenient standard where "not one of the plaintiffs explains why" she understood that she should not record additional work, or "why she believes [defendant] 'expected' her to be ready to accept a call from the very beginning to the very end of her scheduled tour"). This final link is simply missing here, and Plaintiffs have not met their burden of showing that conditional certification of an FLSA collective action is appropriate at this time.[6]

In sum, while a lenient standard applies to Plaintiffs' conditional certification request, Plaintiffs have not met their burden of showing that they are similarly situated to other potential plaintiffs because they were all subject to a common policy or practice that violates the FLSA. Plaintiffs have not presented adequate evidence that other plaintiffs were not requesting compensation for missed or interrupted meal breaks, nor that management knew or should have known employees were working through meal breaks and not requesting compensation. Even if Plaintiffs have presented adequate evidence that they and other Respiratory Therapists routinely worked through meal breaks, they must take that evidence a step further and present evidence indicating that HHC violated the FLSA by not compensating employees for that time. This they have not done. Plaintiffs' Motion to Certify is denied to the extent that the Court declines to conditionally certify a collective action class relating to Ms. Walker's and Ms. Fisher's FLSA claim.[7]

---

[6] Even if the Court were to consider the untimely Declaration of Tasha Secuskie, discussed above, its conclusion would not change. Ms. Secuskie discussed statements made by Jim Graves regarding instructing employees to refrain from requesting pay for missed or interrupted meal breaks, but HHC provided evidence that Mr. Graves has not worked for Eskenazi Health, and left his employment with Wishard Health Services in July 2011. [Filing No. 47-1 at 1.] The proposed FLSA collective action class here includes Respiratory Therapists who worked at Eskenazi Health after that time. [Filing No. 27 at 6.] The Court does not find relevant statements Mr. Graves made, at the latest, in mid-2011.

[7] The Court also notes that although the collective action class is limited to those who have not been paid overtime wages because they did not take a full meal break, the evidence before the Court indicates that the majority of Respiratory Therapists may not have worked enough hours to

### B.  Certification of IWPA Claim Under Rule 23

In deciding whether to certify a class, the Court may not blithely accept as true even the well-pleaded allegations of the complaint but must instead "make whatever factual and legal inquiries are necessary under Rule 23" to resolve contested issues. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). Specifically, the Court must find that the putative class satisfies the four prerequisites set forth in Federal Rule of Civil Procedure 23(a). If the putative class does satisfy these prerequisites, the Court must additionally find that it satisfies the requirements set forth in Federal Rule of Civil Procedure 23(b), which vary depending upon which of three different types of classes is proposed.

It is the plaintiff's burden to prove first that an identifiable class exists that merits certification under Federal Rule of Civil Procedure 23(a). *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). The four prerequisites under Rule 23(a) are that: "(1) the class is so numerous that joinder of all its members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

---

qualify for overtime. Ms. Vaughan and Ms. Bell do not provide any information in their declarations regarding how many hours they typically worked in a week, nor how many hours for which they allege they were not properly compensated. [*See* Filing No. 27-7; Filing No. 27-8.] The only evidence regarding the amount of time Respiratory Therapists typically worked indicates that the Department operates on two shifts – the day shift, which runs from 7:00 a.m. to 7:30 p.m., and the night shift, which runs from 7:00 p.m. to 7:30 a.m. [Filing No. 33-16 at 3.] There are weekday and weekend shifts, with weekday employees typically working three shifts per week and weekend employees typically working two or three shifts per week. [Filing No. 33-16 at 3.] This indicates that the typical Respiratory Therapist worked either 36 hour per week (a weekday employee working three shifts per week) or between 24 and 36 hours a week (a weekend employee working two to three shifts per week). So the most weekday and weekend employees would have worked (assuming they missed their meal break, or had their meal break interrupted, every day that they worked) is a total of 37.5 hours a week –36 hours, plus 1.5 hours (.5 hours each of their three work days) of meal break time they did not take. They would not be entitled to overtime because they did not work 40 hours per week or more.

- 23 -

of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Class certification is not appropriate unless the named plaintiff establishes all four prerequisites. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982).

As discussed above, Plaintiffs have clarified that they do not seek certification of a class under the IWCA. Rather, they only seek certification of the following class under the IWPA:

> Present and former Respiratory Therapists (i.e. Respiratory Care Practitioners and Respiratory Care Clinical Specialists) who voluntarily left their employment at any time from December 16, 2013 to the present and who were not timely paid wages on one or more occasion for time worked because the employee took a lunch break of twenty (20) minutes or less.

[Filing No. 27 at 5-6.]

### 1. *Rule 23(a) Analysis*

Plaintiffs argue that their class meets all four requirements of Rule 23(a). Specifically, Plaintiffs first contend that the numerosity requirement is satisfied because "discovery has revealed a potential class of sixty-seven (67) to seventy-one (71) individuals." [Filing No. 27 at 9.] Second, Plaintiffs argue that the commonality requirement is satisfied because common policies are at issue relating to Eskenazi Health's meal break policy and "the unwritten requirement in [the Department] that lunch exceptions were to be reported only when no break for lunch was taken (rather than a uninterrupted break of at least 20 minutes)." [Filing No. 27 at 10.] Third, Plaintiffs assert that their claims are typical of the class because they "arise under the same course of conduct at issue for all proposed class members, and the claims of Named Plaintiffs are based on the same statutes and legal theory applicable to all proposed class members." [Filing No. 27 at 11-12.] Finally, Plaintiffs contend that they are adequate class representatives, and that their counsel is adequate as well. [Filing No. 27 at 12-14.]

The Supreme Court has instructed that the district court must perform a "rigorous analysis" to determine whether the prerequisites of Rule 23(a) have been satisfied because "'actual, not presumed, conformance with Rule 23(a) remains…indispensable.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (quoting *Gen. Tel. Co.*, 457 U.S. at 160).  HHC disputes each of the Rule 23(a) requirements,[8] and the Court will address them in turn.

a.   Numerosity

First, Plaintiffs state that discovery has shown that the potential class consists of 67 to 71 individuals.  [Filing No. 27 at 9.]  HHC argues that Plaintiffs have not affirmatively demonstrated that joinder would be impracticable, and that the alleged class size here is approximately 60 individuals, which "falls squarely into the 'small' category."  [Filing No. 32 at 15.]  The Court can only certify a class that "is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)."  *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 644 (N.D. Ill. 2002) (collecting cases); *Hubler Chevrolet, Inc. v. GMC Corp.*, 193 F.R.D. 574, 577 (S.D. Ind. 2000).  The parties agree that the class consists of at least 60 Respiratory Therapists.  This is sufficient evidence to show that Plaintiffs' proposed class meets the numerosity requirement of Rule 23.

---

[8] HHC also argues that Plaintiffs have not stated IWPA or IWCA claims because they never challenged the alleged unwritten policy that employees should refrain from requesting payment for missed or interrupted meal breaks, and never sought payment for those breaks.  [Filing No. 32 at 14-15.]  The standard applicable to this argument, which is an argument in support of dismissal of the IWPA and IWCA claims, is far different than the class certification standard.  The Court finds that Plaintiffs have adequately stated individual IWPA and IWCA claims based on the allegations in the Amended Complaint.

b.  <u>Commonality and Typicality</u>

Second and third, as to commonality and typicality, Plaintiffs argue that commonality is satisfied because the common question in this case is whether HHC is liable under the IWPA for automatically deducting a 30-minute meal break and having "an unwritten requirement…that lunch exceptions were to be reported only when no break for lunch was taken (rather than a uninterrupted break of at least 20 minutes)." [Filing No. 27 at 10.] They also assert that their claims are typical of the class because they are not in conflict with any of the remaining class members, and their claims arise from the same course of conduct as the proposed class members. [Filing No. 27 at 11-12.]

HHC argues that the "real question" is "whether [Plaintiffs and the proposed class members] were paid all wages due to them," and that question "can only be answered by reference to each individual's schedule, assignments, habits, workload, and reporting practices." [Filing No. 32 at 17.] HHC also asserts that Plaintiffs' claims are atypical because "each alleged instance of an individual working during an unpaid break arises out of a different event and a different set of circumstances.  The factual circumstances of each person's work, breaks, and pay are too varied to support a class action." [Filing No. 32 at 18.]

On reply, Plaintiffs argue that the fact that class members may be affected differently by Eskenazi Health's practices does not defeat commonality, and that Eskenazi Health's policy of only reporting missed meal breaks when no break was taken at all (rather than also when the break was interrupted) resulted in class members not being properly compensated under the FLSA. [Filing No. 40 at 6-7.] They reiterate their argument that their claims are typical because Eskenazi Health treated all Respiratory Therapists the same. [Filing No. 40 at 7-8.]

A class action requires "questions of law or fact common to the class," and the plaintiff's claims or defenses must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2)-(3). Commonality is satisfied when there is a "common nucleus of operative fact," that is, a "common question which is at the heart of [the] case." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). All questions of fact or law need not be identical; rather, the requirement is satisfied as long as the class claims arise out of the same legal or remedial theory. *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 167 (S.D. Ind. 2009). The commonality and typicality requirements tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co.*, 457 U.S. at 158 n.13. Although typicality may exist even if there are factual distinctions between the claims of the named plaintiffs and other class members, the requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (citation omitted).

The Court finds that Plaintiffs have not satisfied the commonality requirement. As discussed above, Eskenazi Health's policy regarding automatically deducting a 30-minute meal break is not a *per se* violation of the FLSA. It becomes a violation if employees were working through their meal breaks or had their meal breaks interrupted, were not compensated, and Eskenazi Health knew or should have known this was the case. While Plaintiffs claim that they themselves worked through meal breaks or had their meal breaks interrupted and were not compensated, they do not provide sufficient evidence that other employees had the same experience. Indeed, HHC has provided email messages from numerous employees to Mr. Morton, where the employees requested

payment for a missed or interrupted meal break and Mr. Morton agreed to adjust their time. [Filing No. 33-16.] One of these emails is from Ms. Walker, and one is from Ms. Fisher (on behalf of another Respiratory Therapist). [Filing No. 33-16 at 13; Filing No. 33-16 at 16.] Mr. Morton stated in his Declaration that he never rejected a request to adjust time for a missed or interrupted meal break, and Plaintiffs have not disputed that statement. And, as discussed above, Plaintiffs have not presented any evidence that Eskenazi Health had a policy or practice of somehow instructing Respiratory Therapists not to request payment for missed or interrupted meal breaks unless they had no time at all to eat (as opposed to an interrupted meal break). Their conclusory statements in their identical declarations are not enough to establish a common policy or practice to which they and the putative class members were subject. *See Elder v. Comcast Corporation, 2015 WL 3475968, *9 (N.D. Ill. 2015)* (denying certification of meal break class where "the court cannot determine 'in one stroke' whether all technicians were instructed by supervisors and dispatchers to work through lunch without pay. A number of technicians testified that their supervisors or dispatchers reminded them to take a lunch break, whereas others testified to having supervisors 'interrupt' their lunch breaks with work requests"). The Court also finds significant the fact that Eskenazi Health's meal break policy and the training materials presented to management accurately instruct that if employees do not take their full meal break they must be compensated – even if they were not supposed to work through the break. [*See* Filing No. 27-1 at 1-2; Filing No. 33-14 at 20-24.]

Additionally, the Court finds that Plaintiffs have not satisfied the typicality requirement. Again, the Court notes that HHC submitted email messages from numerous employees who requested compensation for missed or interrupted meal breaks, and whose requests were granted. While it does appear that Respiratory Therapists frequently worked through meal breaks, or had

meal breaks interrupted, Plaintiffs must demonstrate more than that.  They must show that their claims that they were not paid for those missed or interrupted meal breaks are typical of the putative class members.  They have not presented any evidence that this is the case, other than the declarations of Ms. Vaughan and Ms. Bell who simply conclusorily state that "[Eskenazi Health's] policy and practice is to not request payment for working through the meal-break unless the Respiratory Therapist received no time, whatsoever, to sit down and eat." [Filing No. 27-7 at 2; Filing No. 27-8 at 2.]  These statements do not show that Eskenazi Health instructed Respiratory Therapists to refrain from requesting payment for missed or interrupted meal breaks.  Again, the emails HHC submitted from numerous employees making such a request prove differently.  Plaintiffs have failed to show that their claims are typical of those of the putative class members.

### c.   Adequacy of Representation

The Court is required to find whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry is composed of two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest[s] of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (citation and quotation marks omitted).  To adequately represent the class, the representative plaintiffs "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citation and quotation marks omitted).

HHC argues that Ms. Walker would not be an adequate class representative because she recently received a right to sue letter from the Equal Employment Opportunity Commission, and this creates a conflict "particularly with respect to any efforts that may be made to settle the case." [Filing No. 32 at 19.]  It also argues that Ms. Walker, Ms. Fisher, and Ms. Hash "were disliked by

co-workers…and Fisher and Hash both may have ulterior motives to attack their former employer or have hostility toward their former coworkers based on the fallout from the Department's December 2014 internal review, which took place just a couple of months prior to both of them resigning." [Filing No. 32 at 21.]  HHC does not challenge the adequacy of Plaintiffs' counsel.

Plaintiffs respond to HHC's arguments by pointing out that they are not seeking certification of the IWCA claim, and Ms. Walker is not a proposed representative for the IWPA class. [Filing No. 40 at 8-9.]  They argue that HHC's personal attacks on them are irrelevant, and because Plaintiffs have not yet been deposed "there is no admissible evidence before this Court regarding the Named Plaintiffs['] individual motives…." [Filing No. 40 at 9.]

The Court finds that Plaintiffs have shown that Ms. Fisher and Ms. Hash would be adequate class representatives for the IWPA class.  HHC personally attacks all three Plaintiffs, stating that they were "largely disliked," [Filing No. 32 at 2], or "disliked by co-workers," [Filing No. 32 at 21].  But HHC only submits one declaration, from one employee, stating that she does not consider Plaintiffs to be honest or trustworthy, views their motives as vindictive, does not respect them, and would not want them representing her in a lawsuit.  [Filing No. 33-18.]  The opinion of one fellow employee is not enough to show that Ms. Fisher and Ms. Hash would be inadequate class representatives.  There is a fine line between evidence of inadequacy and personal attacks, and HHC is

- 30 -

cautioned that it has approached that line.[9]  An inadequacy argument must be supported by suffi-cient evidence which demonstrates why Ms. Fisher and Ms. Hash would not be appropriate class representatives.  HHC has not provided that evidence.  Further, the Court finds that Plaintiffs have sufficiently demonstrated that their counsel is competent and motivated to litigate this case, and has extensive experience with previous class actions.

Plaintiffs have not met the four prerequisites of Rule 23(a).  Although they have met the numerosity and adequacy of representation requirements, they have not shown that there are ques-tions of law or fact common to the class, or that the claims or defenses of the representative parties are typical of the claims or defenses of the class.  In the interest of thoroughness, however, the Court will continue with the Rule 23(b) analysis.

### 2.  Rule 23(b) Analysis

Plaintiffs argue that they meet the requirements of Rule 23(b)(3) because "[t]he only issue in the instant case that could be individual to each class member is damages," which does not defeat class certification.  [Filing No. 27 at 16.]  They also argue that a class action is the superior method of adjudicating the claims here because "the difficulties and expense of prosecuting this type of litigation would be counterproductive for both parties."  [Filing No. 27 at 16.]

HHC argues in response that individualized facts affecting each putative class member's jobs preclude certification.  [Filing No. 32 at 22-23.]  For example, HHC notes that Ms. Vaughan

---

[9] Especially troubling to the Court is HHC's submission of a photograph of Ms. Walker using a "skinny wrap," that allegedly appeared on Facebook.  [Filing No. 33-16 at 7.]  HHC references the photograph in arguing that "[d]espite her alleged inability to take uninterrupted lunches, Walker was observed spending a lot of time on her phone, and she even had time available to 'skinny wrap' herself at work."  [Filing No. 32 at 8.]  Whether Ms. Walker in fact had time to take a full, uninterrupted meal break is not relevant to the issue of certification and, in any event, HHC could have made its point without submitting the photograph.  For these reasons, the submission of the photograph appears to be gratuitous and perhaps even mean spirited.

testified that when she notified her supervisor regarding a missed meal break, she was paid. [Filing No. 32 at 23.] HHC argues that "the amount of time at issue would vary significantly from person to person," and "[i]ndividualized factual evidence would need to be considered to determine whether any given therapist took unreported unpaid break time and, if so, how much time was taken." [Filing No. 32 at 23.]

On reply, Plaintiffs again argue that the only individualized issue would be damages. [Filing No. 40 at 10.] They assert that "the predominate [sic] issues are Defendant's automatic deduction policy and whether Defendant had knowledge that Respiratory Therapists were working through and/or being interrupted during their lunch break," not "how much each individual class member was working through lunch." [Filing No. 40 at 10.]

Under Rule 23(b)(3), a class action may be maintained if the prerequisites of Rule 23(a) are satisfied and if the Court finds that the questions of law or fact common to class members predominate over any questions affecting individual class members, and that a class action is superior to other available methods of adjudicating the controversy. Courts consider:

> (A)The class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "'Considerable overlap exists between Rule 23(a)(2)'s commonality prerequisite and Rule 23(b)(3). Rule 23(a)(2) requires that common issues exist; Rule 23(b)(3) requires that they predominate.'" *Mejdreck v. Lockformer Co.*, 2002 WL 1838141, *6 (N.D. Ill. 2002) (quoting *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F.Supp. 1399, 1419 (N.D. Ill. 1996)).

Having already found that Plaintiffs have not shown they are similarly situated to other collective action class members for purposes of their FLSA claim, and have not satisfied the commonality prerequisite of Rule 23(a)(2), the Court concludes that common issues do not predominate over individualized ones. *See Camilotes*, 286 F.R.D. at 355 (denying class certification where plaintiffs had not met burden of showing they were similarly situated to other class members, and stating "Rule 23(b)(3)'s predominance requirement is more stringent than the 'similarly situated' requirement under [the FLSA]," and "Plaintiffs will not be able to prove their claims using evidence that is common to the class").  Additionally, because common issues do not predominate over individualized ones, Plaintiffs have not demonstrated that a class action is the superior method of adjudicating the claims at issue in the litigation.  The Court denies Plaintiffs' Motion to Certify the IWPA class.

In sum, the Court **DENIES** Plaintiffs' Motion to Certify because Plaintiffs have not shown that they are similarly situated to other class members in connection with the collective action FLSA class, and because they have not met the commonality and typicality requirements of Rule 23(a), nor the requirements of Rule 23(b)(3), in connection with the IWPA class.  Because the Court has denied the Motion to Certify, it also **DENIES AS MOOT** Plaintiffs' Motion for Approval of Proposed Collective Action Notice and Opt-In Consent Form, [Filing No. 25], and Plaintiffs' Motion for Approval of Proposed Rule 23 Class Notice, [Filing No. 26].

## IV.
### CONCLUSION

For the foregoing reasons, the Court:

- **DENIES** Plaintiffs' Motion for Leave to File Supplemental Evidence in Support of Rule 23 and FLSA Conditional Certification, [Filing No. 46];

- **DENIES** Plaintiffs' Motion to Certify Combined Class Action and FLSA Collective Action, [Filing No. 24];

- **DENIES AS MOOT** Plaintiffs' Motion for Approval of Proposed Collective Action Notice and Opt-In Consent Form, [Filing No. 25]; and

- **DENIES AS MOOT** Plaintiffs' Motion for Approval of Proposed Rule 23 Class Notice, [Filing No. 26].

The Court requests that the Magistrate Judge confer with the parties to address the possibility of an agreed resolution, or to establish a schedule for trial.


Date: 12/9/2016

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana


**Distribution via ECF only to all counsel of record**